MEMORANDUM AND ORDER
 

 WOLF, District Judge.
 

 Attached is a memorandum based upon the transcript of the decision rendered orally on April 12, 1996, identifying the relevant policymakers for the City of New Bedford for purposes of the municipal liability phase of the trial in this case. This memorandum adds citations, deletes some colloquy, and clarifies some language.
 

 I. Introduction
 

 Certain employees of the New Bedford Police Department have been found liable for constitutional violations in phase one of the bifurcated trial in this case (“Phase One”). More specifically, in Phase One the jury found that Morris Pina, Jr. was beaten by at least one employee of the New Bedford Police Department, denied care for his serious medical needs this caused, and died as a result of these violations of his constitutional rights.
 
 [1]
 
 The jury was, however, unable to identify which of the eight individual defendants participated in this misconduct because they each engaged in a cover-up intended to keep Pina’s estate from discovering its claims and proving them. This too violated constitutional rights remediable under 42 U.S.C. § 1983.
 
 [2]
 
 The jury awarded $430,000 in damages for the cover-up.
 

 In Phase Two of the trial, plaintiff Delores Gonsalves seeks to hold the City of New Bedford (the “City”) liable for those violations as well. The City is not hable on a
 
 respondeat superior
 
 basis for the constitutional torts of its employees.
 
 [3]
 
 Rather, the City is hable under 42 U.S.C. § 1983 only if it is proven that the unconstitutional conduct of its employees implements or executes a municipal pohcy or custom.
 
 [4]
 
 This means that the actions of subordinate officials alone cannot create municipal liability.
 
 [5]
 
 Rather, the City is potentially hable only for the conduct of its final policymaker or policymakers concerning the conduct in question.
 
 [6]
 

 II. Identifying the Relevant Policymaker or Policymakers
 

 It is the duty of the court to interpret state law and decide before instructing the jury who the policymaker is for the purpose of the area of the City’s business at issue in this case.
 
 [7]
 
 As the Supreme Court noted in
 
 Praprotnik,
 

 [8]
 
 and as the First Circuit found in Bordanaro,
 
 [9]
 
 policymaking authority can be shared. In deciding who the final policymaker is,
 
 Jett
 
 instructs the court to look at the relevant positive law and also to the custom in the City of New Bedford.
 
 [10]
 

 Once the final poheymaker(s) are identified, it is for the jury to decide whether the policymaker or policymakers’ decisions have caused the deprivation of rights at issue by policies which affirmatively command that those violations occur or by acquiescence in a long-standing practice or custom which constitutes the “standard operating procedure”
 
 *917
 
 of the local governmental entity.
 
 [11]
 

 Final policymaking authority can be delegated.
 
 [12]
 
 However, significantly for this case, as the Supreme Court said in
 
 Praprotnik,
 
 “[wjhen an official’s discretionary decisions are constrained by policies not of that official’s making, those policies, rather than the subordinate’s departures from them, are the act of the municipality.”
 
 [13]
 

 In this ease, the plaintiff alleges that the City of New Bedford is liable for the failure of its Chief of Police, Richard Benoit (the “Chief’), to cause proper investigation of complaints of misconduct against employees of the New Bedford Police Department, to find violations of duty which have occurred, and to recommend to Mayor John Bullard (the “Mayor”) that such violations be disciplined.
 

 The plaintiff further alleges that this misconduct created an environment in which New Bedford Police Department employees believed that they could commit constitutional violations which would not be effectively investigated or disciplined, and that this misconduct was affirmatively linked to, and a moving force behind, the constitutional violations by the individual defendants which were proven in Phase One.
 
 [14]
 

 I find, however, that the New Bedford City Council (the “City Council”) and the Mayor of New Bedford were the final policymakers for the matters at issue in this case. Therefore, to establish municipal liability, the plaintiff must prove that these policymakers were deliberately indifferent to the commission of constitutional violations by employees of the New Bedford Police Department and that their deliberate indifference caused the constitutional violations proven in Phase One.
 
 [15]
 

 In reaching this conclusion, I rely on the relevant positive law in this case, which includes the rules and regulations of the New Bedford Police Department (the “Rules and Regulations”), that were adopted by the City Council and approved by the Mayor.
 
 [16]
 
 They provide, in part, that “[t]he Mayor shall be the executive head and general directing authority in control and management of the New Bedford Police Department.”
 
 [17]
 

 They also provide that, “subject to the pertinent law, these rules and regulations and orders of the Mayor, the Chief of Police shall have the authority over ... all employees of the New Bedford Police Department.”
 
 [18]
 
 The Chief may promulgate orders “which are not inconsistent with the law, these rules and regulations, or any lawful and legal orders or instructions of the May- or....”
 
 [19]
 

 With regard to complaints of misconduct by police officers, the Rules and Regulations provide that “[u]pon receipt of [a] complaint, the Chief of Police ... will cause an investigation to be made.”
 
 [20]
 
 The Rules and Regulations direct that “[t]he officers assigned to investigate will conduct a thorough and impartial investigation into all facets of the complaint, obtaining detailed statements from the complainant, witness(es) and the accused, and any other evidence, facts or circumstances material to the issue____”
 
 [21]
 

 Section 202.2.1 of the Rules and Regulations addresses what should happen after such an investigation. It states, in part, that “if determined sufficiently warranted,” the Chief “shall ... promptly report all viola
 
 *918
 
 tions of duty ... to the Mayor.”
 
 [22]
 
 This provision implements Section 19-116 of the New Bedford Code which provides that the Chief “shall promptly report to the mayor all violations of duty on the part of any member of the police department, and the mayor shall cause charges to be preferred thereon.”
 
 [23]
 

 Similarly, the Rules and Regulations provide in Section 201.2.2 that “the Mayor may cause charges be preferred against any officer of the Police Department if a violation or neglect of duty ... is reported by the Chief of Police.”
 
 [24]
 
 When charges are preferred by the Mayor, any hearings on them are heard by the Mayor and the City Council.
 
 [25]
 

 In addition, pursuant to Section 202.2.1 of the Rules and Regulations, the Chief “may suspend from duty any member or employee of the [Police] Department as provided for in G.L. C. 31, S 43(e) and these rules and regulations.”
 
 [26]
 
 The Rules and Regulations also state that the Chief “shall be directly responsible for the discipline, training, efficiency and morale of the department.”
 
 [27]
 
 Finally, the Rules and Regulations provide that the Chief “shall review the operations of the rules, regulations, policy, and procedures within the Department periodically and shall cause revisions, deletions and additions to occur when warranted.”
 
 [28]
 

 The evidence in this ease persuades me that, with regard to complaints of misconduct, it was the custom in New Bedford during the period that Mr. Bullard was May- or and Mr. Benoit was Chief for the Mayor to consider only matters in which the Chief found there to be a violation of duty and in which he recommended to the Mayor that discipline be imposed. The Mayor did not review whether investigations of alleged misconduct were being conducted thoroughly and impartially. Nor did the Mayor review whether Chief Benoit was reporting all violations of duty to him. It was also the custom of the City Council not to review these matters during the relevant period. The Mayor did, however, independently review the Chiefs recommendations regarding discipline in the cases which the Chief brought to him and, in at least one instance, the Mayor did not follow the Chiefs initial recommendation.
 

 In these circumstances, the court finds that: (1) New Bedford had a formal policy that required the Chief to cause thorough and impartial investigations to be conducted concerning alleged misconduct by employees of the New Bedford Police Department; (2) New Bedford had a formal policy that required the Chief to report all violations of duty to the Mayor, who would decide whether disciplinary action should be taken and, if so, whether a hearing was required; (3) the Mayor, as the executive head and general directing authority in control of the police department, had the power to review whether these policies were being implemented and followed, but did not exercise this power during the pertinent period; and (4) the City Council had the power to investigate whether these policies were being properly implemented and followed, but did not do so.
 

 In these circumstances, I find that, while it was true that the Chiefs decisions on the question of what type of an investigation of civilian complaints would take place and whether any discipline at all was appropriate were “final”, in the sense that the Mayor and the City Council customarily failed to review them, the plaintiff has nevertheless failed to “forge a link between ‘finality’ and ‘policy’.”
 
 [29]
 
 The Rules and Regulations of the New Bed-ford Police Department and the Code of New Bedford, as promulgated by the Mayor and the City Council, do not give the Chief unbridled discretion as to how to handle civilian complaints. Rather, these written policies dictate that a thorough and impartial investigation shall take place when a complaint is
 
 *919
 
 filed
 
 [30]
 
 and, that if the investigation reveals a violation, it shall be reported to the Mayor.
 
 [31]
 
 In short, the Chief did not have the right under the written ordinances to ignore civilian complaints or to dismiss those that were meritorious. If he did so, once or consistently, he was departing from City policy, not making it.
 
 [32]
 

 Therefore, I find that the City Council and the Mayor are the policymakers for the purpose of this case by virtue of their roles and responsibilities in promulgating the pertinent portions of the New Bedford Code and the New Bedford Police Department Rules and Regulations.
 
 [33]
 
 The Chiefs “discretionary decisions [were] constrained by policies not of [his] making.”
 
 [34]
 
 Thus, as the Supreme Court held in
 
 Pmprotnik,
 
 “those policies, rather than [the Chiefs alleged] departures from them, [were] the act[s] of the municipality.”
 
 [35]
 
 This conclusion is consistent with the analysis in many cases, including
 
 Auriemma v. Rice,
 

 [36]
 

 Spann v. Tyler Independent School District
 

 [37]
 

 Jett
 
 (on remand),
 
 [38]
 

 Pmprotnik
 
 (on remand),
 
 [39]
 
 and two similar district court decisions,
 
 Joiner v. City of Ridgeland
 

 [40]
 

 and
 
 Coming Up Inc. v. San
 
 Francisco.
 
 [41]
 

 Upon reflection, I find that this ease is distinguishable in material respects from some other eases which may appear to suggest that the Chief should be found the final policymaker in this case. For example, in
 
 Mandel v. Doe,
 
 the Court of Appeals for the Eleventh Circuit held that a physician’s assistant was the final policymaker with regard to the provision of medical care at a prison.
 
 [42]
 
 The court noted that “[although it was initially contemplated that the physician’s assistant would be supervised by a medical doc
 
 *920
 
 tor, the evidence revealed that a custom and practice developed so that the policy was that [the physician’s assistant] was authorized to function without any supervision or review at all.”
 
 [43]
 
 In contrast to the present case, the defendants in
 
 Mandel
 
 never argued that there was
 
 not
 
 a delegation of final policymaking authority to the physician’s assistant whose conduct was in question in that ease. Furthermore, there were in
 
 Mandel
 
 no relevant affirmative policies constraining the physician’s assistant’s actions comparable to the Rules and Regulations and the New Bed-ford Code in this ease.
 

 Similarly, in
 
 Flanagan v. Munger,
 
 the Court of Appeals for the Tenth Circuit found that the police chief was the relevant final policymaker with respect to reprimanding police officers.
 
 [44]
 
 This case is also distinguishable. First, the city in
 
 Flanagan
 
 admitted that it had delegated to the police chief final authority to reprimand.
 
 [45]
 
 Second, according to the court, the city “all but flatly” stated that the chief was the final policymaker.
 
 [46]
 
 Third, there was evidently no positive law in the city analogous to the Rules and Regulations and the New Bedford Code in this case. I will say, nevertheless, that
 
 Flanagan
 
 is arguably a helpful case to the plaintiffs claim that Chief Benoit is the final policymaker. However, I find that it is distinguishable and to the extent that it is not truly distinguishable, I think it is not correctly decided.
 

 III. Establishing Municipal Liability
 

 Accordingly, to establish municipal liability in Phase Two of the trial in this ease, the plaintiff will have to prove that the City Council and the Mayor had a custom of being deliberately indifferent to civilian complaints of misconduct committed by employees of the police department and that this custom was the moving force behind the-deprivation of constitutional rights proven in Phase One.
 
 [47]
 

 Based on the evidence in this case, this means that it must, among other things, be proven that a failure of the New Bedford Police Department to investigate civilian complaints thoroughly and impartially and/or a failure to discipline employees for violations of duty was so well-settled and widespread that the policymaking officials can be said to have had either actual or constructive knowledge of such a practice yet did nothing to end the practice.
 
 [48]
 

 As the Supreme Court held in
 
 City of Oklahoma v. Tuttle,
 
 such a custom cannot be proven by a single incident alone.
 
 [49]
 
 The jury can, however, consider what occurred in the Pina case with all of the other evidence in deciding whether the necessary custom has been proven.
 
 [50]
 
 Ultimately, if it is proven that Chief Benoit did not perform his relevant duties properly, it must also be shown that the need for more or different investigations of allegations of misconduct by New Bedford Police Department employees, or more or different decisions regarding whether some discipline was necessary, was “so obvious, and the inadequacy so likely to result in [a] violation of constitutional rights, that the [City Council and the Mayor] can reasonably be said to have been deliberately indifferent to that need.”
 
 [51]
 
 If this is proven, the plaintiff must next prove that such deliberate indifference was the cause of, and the moving force behind, the deprivation of constitutional rights that the jury found in Phase One.
 
 [52]
 

 Therefore, the court finds that the Mayor and City Council are the final policymakers for the purpose of determining municipal lia
 
 *921
 
 bility in this case, and will instruct the jury in accordance with the foregoing analysis.
 

 [1]
 

 .
 
 See Graham v. Connor,
 
 490 U.S. 386, 394-95, 109 S.Ct. 1865, 1870-71, 104 L.Ed.2d 443 (1989) (use of excessive force violative of constitutional rights);
 
 Estelle
 
 v.
 
 Gamble,
 
 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) (denial of medical care violative of constitutional rights).
 

 [2]
 

 .
 
 See Landrigan v. City of Warwick,
 
 628 F.2d 736, 742 (1st Cir.1980);
 
 Bell v. City of Milwaukee,
 
 746 F.2d 1205, 1267 (7th Cir.1984);
 
 Barrett v. United States,
 
 689 F.2d 324, 332 (2nd Cir.1982).
 

 [3]
 

 .
 
 Monell v. Department of Social Services,
 
 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).
 

 [4]
 

 .
 
 Id.
 
 at 694, 98 S.Ct. at 2037-38.
 

 [5]
 

 .
 
 Id.
 
 at 692, 98 S.Ct. at 2036-37.
 

 [6]
 

 .
 
 City of St. Louis v. Praprotnik,
 
 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988).
 

 [7]
 

 .
 
 Jett v. Dallas Independent School District,
 
 491 U.S. 701, 737, 109 S.Ct 2702, 2723-24, 105 L.Ed.2d 598 (1989).
 

 [8]
 

 .
 
 Praprotnik,
 
 485 U.S. at 126, 108 S.Ct. at 925-26.
 

 [9]
 

 .
 
 Bordanaro v. McLeod,
 
 871 F.2d 1151, 1161 (1st Cir.1989) (holding that the Mayor and the Chief of Police “were the policymakers for the city regarding law enforcement matters.").
 

 [10]
 

 .
 
 Jett,
 
 491 U.S. at 737, 109 S.Ct. at 2723-24.
 

 [11]
 

 .
 
 Id.
 

 [12]
 

 .
 
 Pembaur v. City of Cincinnati,
 
 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986);
 
 Praprotnik,
 
 485 U.S. at 124, 108 S.Ct. at 924-25.
 

 [13]
 

 .
 
 Praprotnik,
 
 485 U.S. at 127, 108 S.Ct. at 926.
 

 [14]
 

 .
 
 See Bordanaro,
 
 871 F.2d at 1162.
 

 [15]
 

 .
 
 Id.
 
 at 1161.
 

 [16]
 

 .
 
 See Rules and Regulations Manual of the New Bedford Police Department ("Rules and Regulations Manual"),
 
 as amended, submitted by the Mayor to the City Council on November 9, 1972 and approved by the City Council on January 11, 1973.
 

 [17]
 

 .
 
 Id.
 
 at§ 201, p. 16.
 

 [18]
 

 .
 
 Id.
 
 at § 202.1, p. 18.
 

 [19]
 

 .
 
 Id.
 

 [20]
 

 .
 
 Id.
 
 at § 516.3, p. 107.
 

 [21]
 

 .
 
 Id.
 
 at § 516.4, p. 107.
 

 [22]
 

 .
 
 Id.
 
 at § 202.2.1, p. 18.
 

 [23]
 

 . New Bedford Code, § 19-116.
 

 [24]
 

 .
 
 Rules and Regulations Manual,
 
 § 201.2.2, p. 17.
 

 [25]
 

 . New Bedford Code, § 19-116.
 

 [26]
 

 .
 
 Rules and Regulations Manual,
 
 § 202.1, p. 18.
 

 [27]
 

 .
 
 Id.
 
 at § 202.2.6, p. 19.
 

 [28]
 

 .
 
 Id.
 
 at § 202.2.18, p. 21.
 

 [29]
 

 .
 
 Auriemma v. Rice,
 
 957 F.2d 397, 400 (7th Cir.1992).
 

 [30]
 

 .
 
 See Rules and Regulations Manual,
 
 § 516.4, p. 107.
 

 [31]
 

 .
 
 See id.
 
 at § 202.2.1, p. 18; New Bedford Code, § 19-116.
 

 [32]
 

 .
 
 See Pmprotnik,
 
 485 U.S. at 127, 108 S.Ct. at 926.
 

 [33]
 

 . I note that, in answering the complaint, the City of New Bedford and the defendant Richard Benoit admitted that Benoit is the "chief policy-making official of the New Bedford Police Department.” Complaint § 17. This admission, however, does not dispose of the issue of who the final policymaker is for the City of New Bedford in this case. First, the admission does not clearly state that the City and Benoit were admitting that he was the final policymaker for the City. More significantly, the final policymaker determination is a question of law, or a mixed question of fact and law, which is now contested, and the court is not bound even by stipulations on mixed questions of fact and law.
 
 See
 
 22 Wright and Miller,
 
 Federal Practice and Procedure
 
 § 5194, p. 197;
 
 Sanford’s Estate v. Commissioner of Internal Revenue,
 
 308 U.S. 39, 51, 60 S.Ct. 51, 59, 84 L.Ed. 20 (1939).
 

 [34]
 

 .
 
 Pmprotnik,
 
 485 U.S. at 127, 108 S.Ct. at 926.
 

 [35]
 

 .
 
 Id.
 

 [36]
 

 .
 
 Auriemma,
 
 957 F.2d at 399-401 (Chicago Police Superintendent who allegedly engaged in discriminatory employment practices was not municipal policymaker because ordinances applicable to the police department which were passed by the City Council "unequivocally ban[ned] racial and political discrimination.”)
 

 [37]
 

 .
 
 Spann v. Tyler Independent School District,
 
 876 F.2d 437, 438-39 (5th Cir.1989) (failure of school principal to prevent instance of sexual abuse was not "caused by school board policy,” but rather "by the failure of an employee properly to exercise the discretion granted to him by the policy----")
 

 [38]
 

 .
 
 Jett v. Dallas Independent School District,
 
 7 F.3d 1241, 1245-51 (5th Cir.1993) (superintendent of school district was not municipal policymaker with respect to illegal employment decision where he "erroneously” applied the written employment policy adopted by the school district trustees.)
 

 [39]
 

 .
 
 Praprotnik v. City of St. Louis,
 
 879 F.2d 1573, 1575-76 (8th Cir.1989) (mayor and aldermen were not acting as municipal policymakers when they laid off city employee in violation of personnel policies established by the civil service commission.)
 

 [40]
 

 .
 
 Joiner v. City of Ridgeland,
 
 669 F.Supp. 1362, 1370 (S.D.Miss.1987) (city attorney not acting as final policymaker when taking actions in excess of delegated authority and in contravention of state law.)
 

 [41]
 

 .
 
 Coming Up, Inc. v. San Francisco,
 
 830 F.Supp. 1302, 1313 (N.D.Cal.1993) (police chief who illegally seized free newspapers was not final policymaker when the police commission “was the entity authorized to make policy in the area of First Amendment rights” and had "established policies concerning the handling of seized property.”)
 

 [42]
 

 .
 
 Mandel v. Doe,
 
 888 F.2d 783, 794 (11th Cir. 1989).
 

 [43]
 

 .
 
 Id.
 

 [44]
 

 .
 
 Flanagan v. Munger,
 
 890 F.2d 1557, 1568 (10th Cir.1989).
 

 [45]
 

 .
 
 Id.
 

 [46]
 

 .
 
 Id.
 

 [47]
 

 .
 
 Bordanaro,
 
 871 F.2d at 1157.
 

 [48]
 

 .
 
 Id.
 

 [49]
 

 .
 
 City of Oklahoma v. Tuttle,
 
 471 U.S. 808, 823-24, 105 S.Ct. 2427, 2436-37, 85 L.Ed.2d 791 (1985).
 

 [50]
 

 .
 
 Bordanaro,
 
 871 F.2d at 1161;
 
 Kibbe v. City of Springfield,
 
 777 F.2d 801, 805-06 (1st Cir.1985).
 

 [51]
 

 .
 
 City of Canton v. Harris,
 
 489 U.S. 378, 390, 109 S.Ct. 1197, 1205-06, 103 L.Ed.2d 412 (1989).
 

 [52]
 

 .
 
 Bordanaro,
 
 871 F.2d at 1157.